IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICKEY B. TIBBS, #4410-362/166-9140, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-19-613 |
| WARDEN PHILIP J. MORGAN, THE WEXFORD UM, | * | |
| EMMANUEL NWOSU, R.N., YETUNDE P. ROTIMI, N.P., | * | |
| DOCTOR YONAS SISAY, DOCTOR ATANFU, | * | |
| | * | |
| Defendants | | |

## MEMORANDUM OPINION

Rickey B. Tibbs, an inmate currently confined at Eastern Correctional Institution ("ECI"), filed suit against Philip J. Morgan, the Warden of Maryland Correctional Institution in Jessup ("MCIJ"), Maryland; the contractual prison health care provider, Wexford Health Sources, Inc. ("Wexford"); and several medical providers who appear to be Wexford employees. Tibbs asserts that while incarcerated at MCIJ, he received constitutionally inadequate medical care on several occasions in 2018, in violation of his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution. ECF No. 1, pp. 5-23; ECF No. 20, pp. 1-2. Warden Morgan ("Morgan") now moves for dismissal or alternatively summary judgment in his favor. ECF No. 15. This motion is ripe and ready for review, and a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, the Court grants Morgan's motion.

I.  **BACKGROUND**

Although not a medical provider (ECF No. 15-5, Morgan Decl., ¶ 2), Defendant Morgan has submitted relevant medical records which this Court considers in the light most favorable to Tibbs. It is undisputed that 58-year-old Tibbs suffers from hypothyroidism (low thyroid levels), deep vein thrombosis and pulmonary embolism. ECF No. 15-3 at p. 2. On February 20, 2018, Tibbs reported that his right arm and leg were numb, he had fallen, and found it difficult to speak. *Id.* Medical staff examined Tibbs, noting no focal neurological deficit or arm weakness, and that Tibbs spoke clearly with normal facial movement. *Id.* Finding no evidence that Tibbs had suffered a stroke, staff continued to hydrate Tibbs and kept him for two hours of observation. *Id.* Although records reflect that Tibbs "left the clinic against medical advise (sic)," Tibbs maintained that staff ignored his needs. ECF No. 15-3, p. 2.

A little over a month later, on March 24, 2018, Tibbs became dizzy, started to cough, and fell down the stairs, cutting the back of his head. He was seen by in-house medical staff who assessed that Tibbs sustained a "superficial injury to the skin." ECF No. 15-3, p. 9. Tibbs reported occasional dizziness on March 29, 2018. *Id.*, p. 10. After additional visits to the medical unit, Tibbs was approved for an outside neurological consult at Bon Secours Hospital which occurred on May 23, 2018. ECF No. 1-2, p. 40. The consult revealed no serious neurological deficits. ECF No. 1-2, p. 41. Tibbs also underwent an MRI on July 20, 2018 which revealed "no evidence of . . . lesion, hemorrhage . . . [or] acute CVA (cerebrovascular accident," also known as a "stroke"). ECF No. 15-3, pp. 19. Despite these findings, Tibbs reported on June 10, 2018, that he continued to experience dizziness and headaches since his fall down the stairs. *Id.,* p. 21.

Tibbs thereafter complained to the Warden through the Administrative Remedy Procedure ("ARP") about his medical care. ECF No. 15-4, pp. 3-4. On May 14, 2018, Morgan

dismissed the grievance, reasoning that the medical records did not document any neurological deficits or any medical findings that required an emergency room visit for either a stroke or concussion. *Id.,* p. 5. Tibbs appealed this decision to the Commissioner. The appeal, which was not processed initially, was resubmitted on June 5, 2018, and dismissed on July 26, 2018, based on a determination that Tibbs' condition had improved after his arrival at the medical unit. *Id.* [2]

Tibbs again complained in a separate ARP about the episode on March 24, 2018, in which he suffered a sudden onset of dizziness, fell down a flight of stairs, and cut his head. ECF No. 1-2, pp. 4-6. Tibbs contended that the medical staff were "generally unprofessional" and not acting "in the best interest of me" by failing to follow concussion protocol and treat his laceration properly. *Id.,* pp. 5-6. On May 14, 2018, Morgan dismissed the second grievance as "repetitive" of the first. ECF No. 15-4, p. 7. Tibbs appealed Morgan's determination to the Commissioner of Correction who dismissed the action on July 26, 2018. *Id.*, pp. 11, 13.

## II. STANDARD OF REVIEW

Morgan moves to dismiss the Complaint or alternatively for summary judgment in his favor. A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules if Civil Procedure tests the sufficiency of the Complaint. When reviewing such a motion, the Court takes all well-pleaded Complaint allegations as true and most favorably to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005), citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). To survive

---

[2] During this period, Tibbs also filed an Inmate Grievance Office ("IGO") grievance, No. 20180921, on May 24, 2018, complaining that he did not receive adequate treatment while experiencing symptoms of a stroke. ECF No. 15-4, p. 2. The grievance was dismissed on July 13, 2018, because the IGO was not authorized to consider grievances against a private health care contractor or its employees. *Id.* The dismissal of this IGO grievance is not at issue here.

a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

However, the parties have also submitted evidence that go beyond the facts averred in the Complaint.[3] Accordingly, the Court may construe the motion as one for summary judgment brought pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is proper where no genuine issue as to any material fact entitles the moving party to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there

---

[3] Although motions for summary judgment customarily follow formal discovery, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (2011), where the motion is filed prior to discovery, the non-movant must oppose summary judgment and justify the need for formal discovery. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Under Rule 56(d), the non-movant must explain why, "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. *See* Fed. R. Civ. P. 56(d); *see also Harrods*, 302 F.3d at 244-45. Despite receiving notice that Morgan moves for summary judgment, Tibbs has not requested formal discovery. Accordingly, the Court sees no impediment proceeding on the motion as one for summary judgment.

is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). When assessing the propriety of summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in his favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

**II.    ANALYSIS**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" through the guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment," *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), and may include claims premised on denial of medical care. To sustain this claim, the plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). To demonstrate a defendant's deliberate indifference to a serious medical need, the plaintiff must show that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical care but failed to provide it or assure that necessary care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when "diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Morgan primarily contends that summary judgment is warranted because he is not involved in any aspect of providing medical care to the MCIJ inmates, including Tibbs. Rather, Tibbs focuses on Morgan's failure to fully investigate Tibbs's administrative grievances against the medical provider and its staff. ECF No. 21, pp. 5-8. In an uncontroverted Declaration, Morgan avers that he had no personal involvement in the provision of medical care to any MCIJ inmate, and no authority to order contractual medical staff to perform any particular medical procedure or treatment. ECF No. 15-5, ¶ 2. Morgan further avers that he relies on his staff to prepare his responses to administrative grievances. *Id.,* ¶ 4.

The heart of Tibbs' Eighth Amendment challenge remains against the Medical defendants for whom service of process is not yet completed. Warden Morgan, by contrast, cannot be held liable for any alleged Eighth Amendment violation merely because he reviewed Tibbs' ARPs complaining of inadequate medical care. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) citing *Whitington v.Ortiz,* 307 Fed, Appx. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."). Absent any evidence reflecting that Warden Morgan participated in the provision of Tibbs' medical care, claims against Morgan cannot proceed. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Morgan's position as Warden does not alter the analysis because no evidence exists that he had any role in the provision of Tibbs' medical care. *See Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737

F.2d 368, 372 (4th Cir. 1984)) (respondeat superior is not a basis for liability in litigation brought pursuant to 42 U.S.C. § 1983).

As to whether a cause of action against Morgan arises from flaws in the grievance procedure itself, the Court recognizes that inmates "have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 541 (4th Cir. 2017). Accordingly, any failure to follow strictly the grievance procedures alone does not give rise to a constitutional claim against Morgan. *See Ewell v. Murray*, 11 F.3d 482, 487-88 (4th Cir. 1993); *Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) (". . . assuming, *arguendo*, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated."); *Ireland v. Morgan*, No. WDQ-10-1943, 2012 WL 503820, at *7 (D. Md. Feb. 14, 2012). When viewing the record most favorably to Tibbs, no claims survive against Morgan. Summary judgment is granted in his favor.

## IV. Conclusion

For the above-stated reasons, Morgan is entitled to summary judgment in his favor and his motion shall be granted. A separate Order follows.

    12/12/19                                                      /S/
Date                                                          Paula Xinis
                                                             United States District Judge